IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
**Norfolk Division**

JAMES T. BUFORD, et al.,

        Plaintiffs,

v.

                                               Action No.  2:18cv154

OCWEN LOAN SERVICING, LLC, et al.,

        Defendants.


**UNITED STATES MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

      James T. Buford and Babetta T. Buford (collectively "plaintiffs") brought this action in the Circuit Court for the City of Chesapeake ("the circuit court") alleging several claims arising from defendants'—Ocwen Loan Servicing, LLC ("Ocwen"), and Surety Trustees, LLC ("Surety")—initiation of foreclosure proceedings on plaintiffs' home.  ECF No. 1-1.[1]  After removal of the action to this Court, Surety filed a motion for nominal treatment, ECF No. 6, and plaintiffs filed a motion to remand to state court.  ECF No. 8.

      An order of reference assigned these motions to the undersigned.  ECF No. 19.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C), Rule 72(b) of the Federal Rules of Civil Procedure, and Local Civil Rule 72, it is hereby **RECOMMENDED** that Surety's motion for nominal treatment be **GRANTED**, that the claim against Surety be **DISMISSED WITHOUT PREJUDICE**, and that plaintiffs' motion to remand to state court be **DENIED**.

---

[1] ECF No. 1-1 is comprised of the docket sheet from the circuit court, the complaint, and the circuit court's order for injunction.

## I.     FACTUAL AND PROCEDURAL HISTORY[2]

The complaint alleges that in September 1996, plaintiffs entered into a mortgage loan contract, consisting of a note and a deed of trust, by which the plaintiffs received financing from Aames Funding Corporation, d/b/a Aames Home Loan, for the purchase of real property located at 608 Windward Drive, Chesapeake, Virginia.[3]  ECF No. 1-1 at 5–6.  Ocwen is presumably the current servicer of the loan.[4]  Plaintiffs fell behind on their payments in September 2017 as a result of Mr. Buford being laid off in December 2015, and the death of Mr. Buford's mother which caused "an unexpected increase of expenses." *Id.* at 6.  In December 2017, plaintiffs attempted to make a payment on their mortgage but the online system did not allow the payment to be processed. *Id.*  Plaintiffs contacted Ocwen directly and after speaking with a representative, plaintiffs "sent over a full and complete loan modification package in January of 2018." *Id.* at 7.  After not receiving any correspondence from Ocwen regarding the documents

---

[2] The factual history contained herein is based on the plaintiffs' complaint at the time of removal. "When reviewing a motion to remand, courts must consider 'the complaint at the time of removal to determine if removal was appropriate in the first place.'" *Brown v. Hernandez*, No. GJH-15-3687, 2016 U.S. Dist. LEXIS 65176, at *3 (D. Md. May 16, 2016) (citing *Merritt Blvd., Inc. v. De"t of Permits & Dev. Mgmt.*, 60 F. App'x 944, 945 (4th Cir. 2003)).

[3] The complaint and plaintiffs' memorandum in support of their motion to remand state that plaintiffs entered into a mortgage loan contract in September 1996. *See* ECF No. 1-1 at 6; ECF No. 9 at 1.  Ocwen states in its motion to dismiss that the loan at issue was entered into in June 2006. *See* ECF No. 5 at 2.  This date is supported by the note and deed of trust attached to the motion to dismiss as exhibits A and B. *See* ECF No. 5-1; ECF No. 5-2.  The Court need not resolve this discrepancy at this time.

[4] None of the parties has stated in their briefs how Ocwen came to be the servicer of the loan in question.  The June 2006 note and deed of trust list Aames Funding Corporation d/b/a Aames Home Loan as the lender. ECF No. 5-1 at 2; ECF No. 5-2 at 3.  In its memorandum in support of its motion to dismiss, Ocwen states that it is the current servicer of the loan and cites to ¶ 8 of the complaint. ECF No. 1-1 at 6; ECF No. 5 at 3.  That paragraph of the complaint, however, states only, "James T. Buford served in the United States Navy for 25 years before retiring from military service."  The complaint does state that Ocwen is a loan servicing entity, ECF No. 1-1 at 6, and that the plaintiffs sent loan modification packages and payments to Ocwen. *Id.* at 6–7.

2

submitted, plaintiffs called Ocwen in February 2018 to "inquire about the status of [their] loan modification review." *Id.* Plaintiffs were asked to send another loan modification package, which they did. *Id.*

After sending the second loan modification package, Mr. Buford "start[ed] receiving notices from attorney's [sic] offices with notices that he had a pending foreclosure sale on his property for February 27, 2018." *Id.* Plaintiffs immediately contacted Ocwen, which stated that plaintiffs had to "completely reinstate the loan in order for the foreclosure sale to be postponed." *Id.*

Plaintiffs filed a complaint and request for preliminary injunction against defendants, Ocwen, and the substitute trustee, Surety, on February 21, 2018 in the circuit court, alleging that: (1) Ocwen's actions constituted a breach of contract; (2) Ocwen breached the covenant of good faith and fair dealing on the promissory note; (3) Surety had "no authority or power" to conduct a foreclosure sale on the property; and (4) Ocwen violated the Virginia Consumer Protection Act. *Id.* at 7–11. In the complaint, plaintiffs seek $70,000.00 in compensatory damages against Ocwen, and to enjoin both defendants from instituting foreclosure proceedings on the property in question until review of the loan modification package and "the required preconditions to foreclosure [were] met." *Id.* at 10.

On March 20, 2018, Surety filed a motion for nominal treatment in the circuit court, ECF No. 6-1, and on the following day, March 21, Ocwen filed a notice of removal in this Court. ECF No. 1. Seven days later, on March 28, 2018, Ocwen filed a motion to dismiss for failure to state a claim, ECF No. 4, and soon thereafter, on March 30, 2018, Surety filed a motion for nominal treatment in this Court. ECF No. 6. Plaintiffs did not file a response to the motion for nominal treatment, but filed a motion to remand to state court on April 4, 2018. ECF No. 8.

Ocwen filed an opposition to this motion on April 18, 2018. ECF No. 15. On April 17, 2018, plaintiffs filed a motion for leave to file a response to the motion to dismiss out of time and requesting that defendant's motion to dismiss be held in abeyance until the Court determines jurisdiction by ruling on plaintiffs' motion to remand, and the motion was granted on April 27, 2018. ECF Nos. 10, 18. Accordingly, this report and recommendation will address only the motion for nominal treatment and the motion to remand.

## II.   ANALYSIS

### A.   Surety's Motion for Nominal Treatment

The Fourth Circuit has defined a nominal party as "a party having no immediately apparent stake in the litigation either prior or subsequent to the act of removal." *Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 260 (4th Cir. 2013). In *Hartford*, the court of appeals specified that, "the key inquiry is whether the suit can be resolved without affecting the non-consenting nominal defendant in any reasonably foreseeable way." *Id.* In its motion for nominal treatment, Surety argues that the allegations set forth in the plaintiffs' complaint do not give rise to a substantive cause of action against Surety. ECF No. 6 at 1. Plaintiffs did not file a response in opposition to Surety's motion for nominal treatment, but they do address Surety's argument in their memorandum in support of remand. ECF No. 9 at 3–4.

Plaintiffs' sole allegation in their complaint against Surety is that it did not have authority to foreclose on the property. ECF No. 1-1 at 9. Plaintiffs elaborate on this claim by arguing that Surety, acting as a substitute trustee, only has a power to foreclose that is "derivative of the lender's contractual rights." *Id.* Although they allege that Ocwen violated the terms of the note and the deed of trust, plaintiffs do not contend that Surety engaged in any wrongdoing besides

"maintain[ing] the scheduled foreclosure sale."[5] *Id.* at 8. *See generally* ECF No. 1-1. In their prayer for relief, plaintiffs do not seek compensatory damages against Surety, but do ask to enjoin defendants from foreclosing on the property until the loan modification package has been addressed. ECF No. 1-1 at 10.

In similar cases involving foreclosure proceedings, courts within the Fourth Circuit have consistently refused to find substitute trustees as "real parties" to a suit when there are no factual allegations of misconduct against them. *See, e.g., Mansfield v. Vanderbilt Mortg. & Fin., Inc.,* 29 F. Supp. 3d 645, 651 (E.D.N.C. 2014) (treating substitute trustee defendants as nominal parties because they held title to the land for the sole benefit of the real parties, and the complaint pled only their citizenship and that they were substitute trustees on plaintiff's deed of trust); *Sherman v. Litton Loan Servicing, L.P.,* 796 F. Supp. 2d 753, 760 (E.D. Va. 2011) (granting a substitute trustee's motion to dismiss because there were no factual or legal allegations alleged against it); *Zambrano v. HSBC Bank USA, Inc.,* No. 1:09-cv-996, 2010 WL 2105164, at *15–16 (E.D. Va. May 25, 2010) (finding the substitute trustee defendant to be nominal because the plaintiff did not allege any impropriety committed by it in foreclosing on the property); *Dempsey v. Transouth Mortg. Corp.,* 88 F. Supp. 2d 482, 484–85 (W.D.N.C. 1999) (finding a substitute

---

[5] In their memorandum of law in support of their motion to remand, plaintiffs allude to the possibility of misconduct by Surety. *See* ECF No. 9 at 5. In a subsection addressing the amount in controversy requirement for diversity jurisdiction, plaintiffs state that, "there are facts plead [sic] in the Complaint that do, in fact, support a cause of action." *Id.* (distinguishing *Monton v. America's Servicing Co.,* No. 2:11cv678, 2012 WL 3596519 (E.D. Va. Aug. 12, 2012)). The plaintiffs, in the same subsection, then assert that, "Defendant Surety is aware of Defendant Ocwen's errors. Failure to act with notice of the breach makes Defendant Surety implicit in such breach." *Id.* The complaint, however, contains no such allegations of implicit breach by Surety, and plaintiffs never provide any facts alleging that Surety was aware of any such errors. *See Hartford Fire Ins. Co.,* 736 F.3d at 262 n.5 ("[I]f we allowed a conclusory statement of interest to determine the nominal party question, we would open the door to precisely the type of gamesmanship at the pleading stage that the nominal party tests endeavor to prevent."). For these reasons, plaintiffs' unsupported assertion of wrongdoing in their memorandum of law will be disregarded in the analysis for Surety's motion for nominal treatment.

trustee to be a nominal party at best because it held title to the land for the sole benefit of the real parties and the complaint contained no factual allegations against it, leading the court to believe that it may have been joined as a defendant just to defeat removal).

In this case, plaintiffs do not allege any wrongdoing by Surety in the complaint. Unlike their claims against Ocwen, plaintiffs do not assert anywhere in their complaint, or in any subsequent filings with the Court, that they contacted Surety for status updates on the foreclosure proceedings, or on the loan modification packages that they allegedly submitted. The case that plaintiffs rely on to rebut Surety's argument for nominal treatment, *Payne v. Bank of Am., N.A.*, No. 3:09-cv-80, 2010 WL 546770 (W.D. Va. Feb. 11, 2010), is distinguishable from the present case. In *Payne*, plaintiffs were seeking to set aside the foreclosure of their home and to re-title the property in their name. *Id.* at *5. The substitute trustee in *Payne*, at the time the plaintiffs filed their complaint, maintained title to the property because it had yet to convey it to the lender. *Id.* at *5, 13–14. For that reason, the court stated that if it were to find in favor of the plaintiffs and re-title the property, the substitute trustee would be adversely affected by losing its claim, thus demonstrating that it had an immediate stake in the suit's resolution. *Id.* at *5, 15–16. The plaintiffs here are not seeking to re-title the property in their name, nor do the plaintiffs allege that Surety holds title. Ultimately, Surety will not be affected by a decision in favor of plaintiffs or defendants.

This case should be further distinguished from *Payne*, because the plaintiffs' complaint in that case raised several factual allegations against the substitute trustee. *Id.* at *6, 17–18 (stating that the plaintiffs made numerous requests to the substitute trustee for information regarding reinstatement figures that went unanswered). In the present case, plaintiffs make no factual allegations of misconduct by Surety. They only claim that Surety lacked the authority to

foreclose due to *Ocwen's* misconduct. *See* ECF No. 1-1 at 9 (emphasis added).

It is also important to note that plaintiffs seek compensatory damages only against Ocwen.   Although plaintiffs seek to enjoin both defendants from instituting foreclosure proceedings in their complaint, courts have found that this type of injunctive relief is not enough to make a defendant a real party to the case. *Mansfield*, 29 F. Supp. 3d at 651 ("Although plaintiff is seeking to enjoin [the substitute trustees] from taking any action adverse to plaintiff's interest in the property, they hold title to the land described in the deed of trust 'for the sole benefit of the real parties in interest to this action.'") (quoting *Dempsey*, 88 F. Supp. 2d at 484).

In a final effort to argue that Surety is a real party to this case, plaintiffs rely on the pleading that Surety filed in the circuit court before this case was removed.   ECF No. 6-1. Plaintiffs argue that "[b]ecause Defendant Surety felt the need to file a responsive pleading, clearly its position is that it is a party to this case and that Chesapeake was an appropriate venue to file a response . . . ." ECF No. 9 at 3.   This argument is unavailing.   Surety has filed nothing over the course of this litigation other than two motions to be treated as a nominal party: the first motion in the circuit court, and the second motion in this Court.   For the aforementioned reasons, Surety's motion for nominal treatment should be **GRANTED**, and the claim against Surety be **DISMISSED WITHOUT PREJUDICE**.

### B.    Plaintiffs' Motion to Remand

In their motion to remand to state court, plaintiffs argue that removal was improper because there was a lack of consent from all defendants, ECF No. 9 at 3, and because this Court lacks subject matter jurisdiction.   ECF No. 9 at 5–6.   For the reasons discussed below, unanimous consent amongst the parties was not necessary for removal, and subject matter jurisdiction does exist.   Accordingly, the plaintiffs' motion to remand should be **DENIED**.

7

1.      **Standard of Review**

"A defendant . . . desiring to remove any civil action from a State court shall file in the district court of the United States . . . a notice of removal . . . containing a short and plain statement of the grounds for removal . . . ." 28 U.S.C. § 1446(a).  A defendant may remove the case to federal court only if the federal court can exercise original jurisdiction over at least one of the asserted claims.  28 U.S.C. § 1441(a).  "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . citizens of different States . . . ." 28 U.S.C. § 1332(a).  Diversity jurisdiction "applies only to cases in which the citizenship of each plaintiff is diverse from the citizenship of each defendant." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).  Additionally, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

Whether removal is proper must "be determined according to the plaintiffs' pleading at the time of the petition for removal." *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939).  *See also Merritt Blvd., Inc. v. Dep't of Permits & Dev. Mgmt.*, 60 F. App'x 944, 945 (4th Cir. 2003) (in reviewing a motion to remand the court considers the complaint at the time of removal to determine if removal was appropriate in the first place).  The party seeking removal bears the burden of establishing jurisdiction in the federal court. *Johnson v. Advance America*, 549 F.3d 932, 935 (4th Cir. 2008).

Once an action is removed to federal court, the plaintiff may file a motion to remand the case to state court if there is a contention that jurisdiction is defective.  28 U.S.C. § 1447(c).  "While it is true that a motion to remand is to be considered in light of the complaint as it existed at the time the removal petition was filed, this does not mean that the court is not to consider

factual issues. On the contrary, the district court is to decide all issues of fact raised by a motion to remand." *Binkley v. Loughran*, 714 F. Supp. 776, 778 (M.D.N.C. 1989). *See also Melendez v. Sebelius*, 611 F. App'x 762, 763 (4th Cir. 2015) ("In determining whether jurisdiction exists, the district court is to regard the allegations in the complaint as 'mere evidence' and may consider evidence outside the pleadings without converting the motion into one for summary judgment.") (citing *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). On a motion to remand, "if federal jurisdiction is doubtful, a remand [to state court] is necessary" to avoid any concerns regarding federalism. *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 815–16 (4th Cir. 2004) (en banc) (quoting *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994)). Nevertheless, a district court should also exercise caution in denying a defendant's access to a federal court because remand orders are generally unreviewable and it would be unjust to deny parties their right to sue in a federal forum. *17th St. Assocs., LLP v. Markel Int'l Ins. Co.*, 373 F. Supp. 2d 584, 592–93 (E.D. Va. 2005) (citations omitted).

### 2. The rule of removal unanimity does not apply here because Surety is a nominal party.

Courts have consistently interpreted 28 U.S.C. § 1446(a) to mean that "all defendants to the action must join in the petition for removal or consent to such removal" in order for the case to proceed in federal court. *Bellone v. Roxbury Homes, Inc.*, 748 F. Supp. 434, 436 (W.D. Va. 1990) (collecting cases). There is an exception to this rule of unanimity when a party to the action is considered purely nominal. *Hartford Fire Ins. Co.*, 736 F.3d at 259. "[W]hen the non-joining defendant is merely a nominal or formal party" it need not give its consent in order for removal to be proper. *Bellone*, 748 F. Supp. at 436.

Plaintiffs argue that, because Ocwen removed the case without the consent of the

9

codefendant Surety, the case should be remanded to state court. ECF No. 9 at 3. But, because Surety is a nominal party, as discussed above, it did not need to give its consent before Ocwen removed the case to this Court. For this reason, plaintiffs' first argument in support of their motion to remand fails.

3.    **Diversity jurisdiction exists because the citizenship of a nominal party need not be considered and because the amount in controversy exceeds $75,000.00.**

Plaintiffs argue that complete diversity does not exist between the parties because, although Ocwen is a citizen of the U.S. Virgin Islands, plaintiffs and Surety are citizens of Virginia. ECF No. 9 at 4. Consequently, they contend, diversity jurisdiction is nonexistent. *Id.* Furthermore, plaintiffs contend that subject matter jurisdiction is lacking because they seek $70,000.00 in damages, thus not satisfying the amount in controversy requirement provided by 28 U.S.C. § 1332(a). ECF No. 9 at 4–5.

With respect to the need for complete diversity of the parties, the Supreme Court has held that, "a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460 (1980). *See also Hughes v. Wells Fargo Bank, N.A.,* 617 F. App'x 261, 263–64 (4th Cir. 2015) (finding that the district court correctly disregarded the nominal defendant's citizenship for jurisdictional purposes). Because Surety is no more than a formal or nominal party to this case, its citizenship does not factor into the diversity analysis.[6] Because the plaintiffs are citizens of Virginia and Ocwen is a citizen of the U.S. Virgin Islands, ECF No. 9 at 4, complete diversity exists between the real parties of this case.

---

[6] Ocwen, in its opposition to plaintiffs' motion to remand, argues that Surety's citizenship should be disregarded in the diversity jurisdiction analysis because Surety has been fraudulently joined. ECF No. 15 at 6–8. Having found Surety to be a nominal party, and thus not having an impact on jurisdiction, it is not necessary to address the issue of fraudulent joinder.

Plaintiffs next contend that diversity jurisdiction, pursuant to 28 U.S.C. § 1332, does not exist because the $70,000.00 sought against Ocwen is less than the value required by the statute. ECF No. 9 at 4–5; ECF No. 1-1 at 10.   However, "in lawsuits 'seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation.'" *Monton v. America's Servicing Co.*, No. 2:11cv678, 2012 WL 3596519, at *4, 10 (E.D. Va. Aug. 12, 2012) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)).   "In suits involving claims to real property, the amount in controversy is the value of the real property, not simply the amount of damages the plaintiff seeks." *Rehbein v. CitiMortgage, Inc.*, 937 F. Supp. 2d 753, 758 (E.D. Va. 2013). *See also Sherman*, 796 F. Supp. at 766 (finding the amount in controversy was met based on "the manifest fact that the value of the Property exceeds $75,000").   The court in *Rehbein* also found that the principal amount on the plaintiff's home mortgage loan, and the outstanding balance on the loan, could be considered in determining the value of the injunctive relief sought. *Id.*   Furthermore, courts will aggregate smaller claims in order to reach the jurisdictional threshold, meaning that, because the plaintiffs are already seeking monetary damages in the amount of $70,000.00, the value of the injunctive relief sought in the complaint need only be worth more than $5,000.00 to reach the section 1332 mandated amount. *See Shanaghan v. Cahill*, 58 F.3d 106, 109 (4th Cir. 1995).

In addition to seeking $70,000.00 in compensatory damages, plaintiffs seek to enjoin Ocwen and Surety from instituting foreclosure proceedings. ECF No. 1-1 at 10.   At the time of removal on March 21, 2018, there is no indication that foreclosure had taken place.[7]   Thus, in determining the amount in controversy, the Court must also consider the value of the plaintiffs' property at the time of removal.

---

[7] Post-removal filings have stated that the property has been foreclosed upon, though no specific date of the foreclosure sale has been indicated. *See* ECF No. 5 at 4; ECF No. 9 at 2.

11

According to the most recent assessment of the property, attached as Exhibit C of Ocwen's notice of removal, the property is valued at around $284,000.00. *See* ECF No. 1-3 at 2. Furthermore, the note and deed of trust signed by the plaintiffs, attached as Exhibits A and B of Ocwen's motion to dismiss, indicate that the loan was for $256,000.00. *See* ECF No. 5-1; ECF No. 5-2. Thus, the amount in controversy exceeds $75,000.00, as required by section 1332.

Plaintiffs nonetheless argue that the value associated with the injunctive relief sought in the complaint is insufficient to satisfy the amount in controversy requirement. Relying on *Mathews v. PHH Corp.*, No. 3:09cv83, 2010 WL 3766538 (W.D. Va. Sept. 24, 2010),[8] plaintiffs state that:

> The court in *Mathews* evaluated the value of an Injunction to stop a foreclosure. Although Plaintiffs seek monetary damages in addition to declaratory relief, the value of the declaratory relief in the present case, as in *Mathews*, is "too speculative to meet even the preponderance of the evidence standard . . . ."

ECF No. 9 at 5 (citing *Mathews*, 2010 WL 3766538, at *6).

*Mathews* is, however, distinguishable. In *Mathews*, plaintiffs were not seeking monetary or injunctive relief, only declaratory relief. *Id.* at *1. The plaintiffs there sought a declaratory judgment that "the mortgagee [plaintiff] must have a face-to-face interview with the mortgagor [defendant] . . . before foreclosure is commenced." *Id.* The *Mathews* court found the facts insufficient to determine with certainty the value assigned to such a face-to-face meeting. *Id.* at *6. In relation to its inability to calculate damages for the declaratory judgment, the court discussed the nature of the relief sought stating, "[p]laintiffs never sought an injunction, preliminary or permanent . . . ," *Id.* at *6 n.4, and "[t]his is not a suit to quiet title or even for

---

[8] In citing this case, plaintiffs state that, "[t]he Virginia Supreme Court has examined the value of an Injunction . . . ," ECF No. 9 at 5, however, this opinion is from the United States District Court for the Western District of Virginia, not the Virginia Supreme Court. The opinion also does not address any rulings of the Virginia Supreme Court.

simple breach of contract." *Id.* at *6.

In this case, the Court does not face the same dilemma. Plaintiffs' complaint seeks injunctive relief and monetary damages for an alleged breach of contract, two factors that were notably absent in *Mathews*. ECF No. 1-1 at 8–9; ECF No. 1-1 at 10. Because this case involves real property and a request for injunctive relief, the Court can consider the value of the property in question at the time of removal, which, as already stated, substantially exceeds $5,000.00. *Rehbein*, 937 F. Supp. 2d at 758.[9]

For the reasons stated above, complete diversity exists between the parties and the amount in controversy requirement is met. Accordingly, this Court has subject matter jurisdiction over the current matter and the plaintiffs' motion to remand to state court should be **DENIED**.[10]

### III.    RECOMMENDATION

For the forgoing reasons, the Court **RECOMMENDS** that Surety's motion for nominal treatment, ECF No. 6, be **GRANTED**, that the claim against Surety be **DISMISSED WITHOUT PREJUDICE**, and that plaintiffs' motion to remand to state court, ECF No. 8, be **DENIED**.

---

[9] In addressing the amount in controversy, plaintiffs state that unlike *Monton*, "there are facts plead [sic] in the Complaint that do, in fact, support a cause of action." ECF No. 9 at 5 (distinguishing *Monton v. America's Servicing Co.*, No. 2:11cv678, 2012 WL 3596519 (E.D. Va. Aug. 12, 2012). This argument has nothing to do with the amount in controversy and has been addressed in the discussion of Surety's motion for nominal treatment.

[10] Plaintiffs also argue that the present case does not involve an issue of federal question jurisdiction. Because the Court finds that diversity jurisdiction exists, there is no need to address plaintiffs' argument concerning the absence of federal question jurisdiction.

## IV.    REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.  Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure.  Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail.  A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof.  *See* Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2.  A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

/s/
Robert J. Krask
United States Magistrate Judge
Robert J.  Krask
United States Magistrate Judge

Norfolk, Virginia
July *13*, 2018

14