**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

JAMES T. BUFORD, et al.,

        Plaintiffs,

v.                                    Action No.  2:18cv154

OCWEN LOAN SERVICING, LLC, et al.,

        Defendants.[1]

## UNITED STATES MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

James T. Buford ("Mr. Buford") and Babetta T. Buford ("Mrs. Buford") (collectively "plaintiffs") brought this action in the Circuit Court for the City of Chesapeake ("the circuit court") alleging several claims arising from the initiation of foreclosure proceedings on plaintiffs' home by defendants Ocwen Loan Servicing, LLC ("Ocwen"), and Surety Trustees, LLC ("Surety"). ECF No. 1-1.[2]  After removal of the action to this Court, Ocwen filed a motion to dismiss for failure to state a claim.  ECF Nos. 4, 8.

An order of reference assigned the motion to the undersigned.[3]  ECF No. 19.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C), Rule 72(b) of the Federal Rules of Civil

---

[1] Surety Trustees, Inc., was initially named as a party defendant, but this Court granted its motion for nominal treatment, ECF No. 6,  and dismissed the claim against it without prejudice on August 29, 2018. ECF No. 24 at 5.

[2] ECF No. 1-1 includes the docket sheet from the circuit court, the complaint, a notice of hearing, and the circuit court's order for injunction.

[3] The Court notes that plaintiffs have also filed a motion for joinder of a necessary party, ECF Nos. 26 and 28, but that motion has not been referred to the undersigned, and is not addressed herein.

Procedure, and Local Civil Rule 72, it is hereby **RECOMMENDED** that Ocwen's motion to dismiss be **GRANTED**, that the complaint be **DISMISSED WITH PREJUDICE**, and the request for injunctive relief be **DENIED AS MOOT**.

## I.     FACTUAL AND PROCEDURAL HISTORY[4]

The complaint alleges that plaintiffs entered into a mortgage loan contract ("loan"), evidenced by a note and a deed of trust, to finance real property located in Chesapeake, Virginia.[5] ECF No. 1-1 at 5–6, Complaint ("Compl.") ¶¶ 5–6.  The deed of trust states: "This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.  All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law."  Compl. ¶ 6; ECF No. 5-2 at 12, deed of trust ¶ 16.  The deed of trust defines "Applicable Law" as "all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect

---

[4] The factual history described herein is based on the plaintiffs' complaint.  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) ("When ruling on a Rule 12(b)(6) motion to dismiss, 'a judge must accept as true all of the factual allegations contained in the complaint.'") (quoting *Erickson v. Pardus,* 551 U.S. 89, 94 (2007)).  The facts also include, where indicated, reference to the deed of trust and note, even though those documents were not attached to the complaint, because they were referenced therein.  *See Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006) (noting that, when ruling on a Rule 12(b)(6) motion, "a court may [without converting the motion into one for summary judgment] consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed").  In their opposition, plaintiffs do not challenge the authenticity of the note and deed of trust attached as exhibits to Ocwen's motion to dismiss.

[5] The complaint states that plaintiffs entered into a mortgage loan contract in September 1996.  *See* ECF No. 1-1 at 6, Compl. ¶ 5.  Ocwen's motion to dismiss states that the loan at issue was entered into in June 2006, and plaintiffs acknowledge that they executed the note and deed of trust in 2006.  *See* ECF No. 5 at 2, ECF No. 30 at 2.  The 2006 date is supported by the note and deed of trust attached to the motion to dismiss as exhibits A and B.  *See* ECF No. 5-1; ECF No. 5-2.  Accordingly, the only documents at issue are the 2006 note and deed of trust.

of law) as well as all applicable final non-appealable judicial opinions."[6] Compl. ¶ 7; ECF No. 5-2 at 4.

The complaint asserts that Mr. Buford was laid off from his job in December 2015, but continued to make payments on the loan until September 2017, when the death of his mother caused "an unexpected increase of expenses." Compl. ¶¶ 9–11. It alleges that, in "December 2017, Mr. Buford attempted to make an online payment on his mortgage to Ocwen.[7] The online system did not allow Mr. Buford to make a payment towards his loan." *Id.* at ¶ 12. Mr. Buford then "contacted Ocwen directly," and the "representative he spoke with informed him he could participate in a loan modification review." *Id.* at ¶ 13. Mr. Buford "sent over a full and complete loan modification package in January of 2018," but he "never received any correspondence from Ocwen regarding his documents, as required by 12 C.F.R. [§] 1024.41(c)(2)," and he "never received a denial letter for the loan modification review, as required by 12 C.F.R. [§] 1024.41(d)."[8] *Id.* at ¶¶ 14–16.

The complaint alleges that "Mr. Buford called Ocwen to inquire about the status of his loan

---

[6] The note states that it "shall be governed by the laws of the State of Virginia." ECF No. 5-1 at 4, note ¶ 6.

[7] Ocwen is presumably the current servicer of the loan, although neither the complaint nor the parties' briefs explain when and how Ocwen came to be the loan servicer. The June 2006 note and deed of trust list "Aames Funding Corporation d/b/a Aames Home Loan" as the lender. ECF No. 5-1 at 2; ECF No. 5-2 at 3. In its memorandum in support of its motion to dismiss, Ocwen states that it is the current servicer of the loan and cites to paragraph 8 of the complaint. Compl. ¶ 8; ECF No. 5 at 3. That paragraph, however, states: "James T. Buford served in the United States Navy for 25 years before retiring from military service." The complaint does state that Ocwen is a loan servicing entity, and that the plaintiffs sent loan modification packages and payments to Ocwen. Compl. ¶¶ 2, 13–19.

[8] Although not identified as such in the complaint, 12 C.F.R. § 1024.41 ("Regulation X") is a regulation implementing the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601—2617 ("RESPA").

3

modification review" in the "beginning of February 2018," and "[a]t that time, he was asked to send another loan modification package with no mention or update regarding the original information sent." Compl. ¶ 17. "Mr. Buford sent another loan modification package to Ocwen for review," "[d]espite being given no update as to the foreclosure status of his home." *Id.* at ¶ 18.

After sending the second information package, "Mr. Buford start[ed] receiving notices from attorney's offices with notices that he had a pending foreclosure sale on his property for February 27, 2018." Compl. ¶ 20. He "immediately contacted Ocwen, but was told by Ocwen that he had to completely reinstate the loan in order for the foreclosure sale to be postponed." *Id.* at ¶ 21. As of the filing of the complaint on February 21, 2018, "Mr. Buford ha[d] not received any correspondence from Ocwen regarding the loan modification review," and the complaint asserts that Ocwen intended to sell the property at auction on February 27, 2018, in spite of Ocwen's alleged errors described in the complaint. *Id.* at ¶¶ 19, 22–23.

The complaint alleges four claims or counts against Ocwen, and seeks compensatory and injunctive relief. The first claim is for a breach of contract. *Id.* at ¶¶ 24–33. Plaintiffs allege that the deed of trust "has a provision that states that the contract is governed by 'federal law' in addition to state law. Furthermore, the rights and obligations arising under the contract are 'subject to any *requirements and limitations* of Applicable Law.'" *Id.* at ¶ 25. They claim that "[u]nder Virginia law, federal regulations governing the servicing of mortgage contracts are integrated into the contract as a condition precedent to foreclosure." *Id.* at ¶ 26 (citing *Mathews v. PHH Mortgage Corp.*, 724 S.E.2d 196 (Va. 2012)). They allege that Ocwen "violated 12 C.F.R. [§] 1024.41(d), which requires loan servicers to provide notice to homeowners of the results of their loss mitigation applications," because Ocwen "provided no such notice." Compl. ¶¶ 27–29. Plaintiffs further contend: "Even if the application was somehow incomplete in some fashion, loan servicers are

4

required under 12 C.F.R. [§] 1024.41(c)(2) to continue to request documentation and evaluate the homeowner for loss mitigation options.  Ocwen cannot simply refer the Plaintiffs' file to foreclosure, as has clearly been done here." *Id.* at ¶ 30.

The second claim is for "breach of contract for good faith and fair dealing," because "[e]very contract imposes an obligation of good faith in its performance and enforcement," and the note and deed of trust "constitute an enforceable contract . . . which contains the implied covenant obligating Defendant Ocwen to treat the Plaintiffs with good faith and deal fairly." Compl. ¶¶ 34–35.  Plaintiffs assert that Ocwen breached this covenant "by (i) failing to properly notify the Plaintiffs of the results of [their] loss mitigation application, and (ii) persisting with a foreclosure auction on the property while the loan modification review, solicited by Ocwen, is ongoing and no final decision has been made." *Id.* at ¶ 36.

Plaintiffs' third claim is that the substitute trustee did not have the authority to foreclose, because the "conditions precedent to foreclosure," including "applicable federal regulations governing the servicing of mortgage contracts," had not been met. *Id.* at ¶¶ 38–39.  Specifically, "[t]wo such applicable provisions are 12 [C.F.R. §] 1024.41(d) and 12 C.F.R. [§] 1024.41(c)(2)," which require a loan servicer to "provide a borrower with written notice of the results of the borrower's loss mitigation application" and to "timely request any additional documentation required from the borrower to fully review the loan application." *Id.* at ¶¶ 40–42. Plaintiffs allege that "Ocwen has dispatched no such notice" to them, so the substitute trustee had no power to conduct a foreclosure sale because the conditions precedent to foreclosure were not satisfied. *Id.* at ¶¶ 43–44.

The fourth and final claim in the complaint is that Ocwen violated the Virginia Consumer Protection Act, Va. Code Ann. §§ 59.1-196—207 ("VCPA"), because it is a "loan servicing

company" subject to the VCPA and "Cenlar has used deception, fraud, false pretense or misrepresentation in connection with the Plaintiffs' consumer transaction which has damaged the Plaintiffs. These practices are specifically prohibited by [Va. Code Ann.] § 59.1-200(A)(14)."[9] Compl. ¶¶ 45–46.

Plaintiffs requested an injunction to prevent foreclosure of the property "until such time as the loan modification [has] been reviewed and the required preconditions to foreclosure have been met," and sought $70,000.00 in compensatory damages against Ocwen. *Id.* at ¶¶ 49–58.

Following a hearing on February 26, 2018, the circuit court granted plaintiffs' request for a temporary injunction by an order of the same date, conditioned "upon the posting of bond in the amount of $14,000 with surety." ECF No. 1-1 at 16. Plaintiffs did not post the bond, and the property was sold at auction to a third party. ECF No. 5 at 4; ECF No. 30 at 2.

Ocwen removed the case from the circuit court to this Court on March 21, 2018. ECF No. 1. On March 28, 2018, Ocwen filed the motion to dismiss and supporting memorandum at issue here. ECF Nos. 4, 5. The Court granted plaintiffs' motion to hold the motion to dismiss in abeyance pending resolution of plaintiffs' motion to remand. ECF Nos. 13, 18. The Court denied the motion to remand on August 29, 2018. ECF No. 24. Plaintiffs then filed their opposition to the motion to dismiss, and Ocwen filed its reply. ECF Nos. 30, 32.

## II.   ANALYSIS

### A.   The general standard for motions to dismiss under Rule 12(b)(6)

Rule 8(a)(2) requires that a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) provides

---

[9] The reference to "Cenlar" appears to be a typographical error, as that entity is not mentioned elsewhere in the complaint. Presumably, this allegation is directed to Ocwen.

for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Under Rule 12(b)(6), dismissal with prejudice is proper when the alleged facts do not state a claim for a recognized cause of action. *See Anderson v. Sara Lee Corp.*, 508 F.3d 181, 190 (4th Cir. 2007) (affirming dismissal of certain claims with prejudice, and noting: "This is not a circumstance in which the claims could have survived a Rule 12(b)(6) challenge but for the plaintiff's failure to plead sufficient facts to satisfy the requirements of Rule 8(a)(2) or Rule 9(b). Rather, the facts alleged—despite the arguably thorough manner in which they were pleaded— simply do not give rise to . . . claims under [governing] law.").

When reviewing a motion to dismiss, the Court "assume[s] all [well-pled facts] to be true" and "draw[s] all reasonable inferences in favor of the plaintiff," but it "need not accept the legal conclusions drawn from the facts, and [] need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citations and internal quotation marks omitted). The Court also considers, without converting the motion to dismiss into one for summary judgment, "official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins.*

7

*Co.*, 164 F. App'x 395, 396 (4th Cir. 2006).

**B.** **Ocwen's motion to dismiss for failure to state a claim should be granted.**

**1.** **Plaintiffs failed to state a claim for breach of contract and lack of authority for the substitute trustee based on the incorporation of RESPA and Regulation X into the deed of trust.**

Ocwen argues that plaintiffs' breach of contract claim should be dismissed, because plaintiffs incorrectly assert that 12 C.F.R. § 1024.41 ("Regulation X") was incorporated into the deed of trust, and that Ocwen violated Regulation X by referring the loan to foreclosure without notices regarding loss mitigation. ECF No. 5 at 5–8. It contends that the deed of trust's "reference to applicable law is not sufficiently specific to incorporate Regulation X." *Id.* at 6.

Plaintiffs respond that the "plain language in the [deed of trust] expresses the intent that RESPA, Regulation X, and its successor legislation is to be incorporated into the [deed of trust]." ECF No. 30 at 4. Although the complaint does not expressly assert that 12 C.F.R. § 1024.41 (Regulation X) was incorporated into the deed of trust, and does not cite any part of the deed of trust other than the "applicable law" provision, plaintiffs now argue that RESPA was explicitly incorporated into the deed of trust based on the applicable law provision quoted above and paragraph P of the deed of trust, which defines RESPA as follows:

> RESPA means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

*Id.* at 2, 4; *see also* ECF No. 5-2 at 4.

As a general matter, a "deed of trust is construed as a contract under Virginia law," and a court "consider[s] the words of [a] contract within the four corners of the instrument itself."

8

*Mathews*, 724 S.E.2d at 200–01 (citation and internal quotation marks omitted).

> When the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning. Words that the parties used are normally given their usual, ordinary, and popular meaning. No word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly.

*Id.* at 201 (citation and internal quotation marks omitted).

Whether a regulation is incorporated into a deed of trust depends on the plain meaning of the terms in the deed of trust. *Id.* ("These words 'are clear and unambiguous' and we will construe them according to their plain meaning. They express the intent of the parties that the rights of acceleration and foreclosure do not accrue under the Deed of Trust unless permitted by HUD's regulations.") (citation omitted); *see also Squire v. Virginia Hous. Dev. Auth.*, 758 S.E.2d 55, 60 (Va. 2014) (noting that "the deed of trust incorporated certain regulations of the United States Department of Housing and Urban Development ('HUD'), and mandated that foreclosure was not permitted where it violated such HUD regulations").

For example, in *Mathews*, the Supreme Court of Virginia concluded that "[a]s a matter of Virginia law, when a deed of trust expressly states on its face that it 'does not authorize acceleration or foreclosure if not permitted by' some external set of conditions identified within the deed of trust, those conditions are fully incorporated as conditions precedent to acceleration and foreclosure." *Mathews*, 724 S.E.2d at 202. The court first noted that the deed of trust in that case provided that "acceleration of repayment is a condition precedent to foreclosure," and then quoted the deed's acceleration provision, which stated: "Lender may, *except as limited by regulations issued by the Secretary,* in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if" the borrower defaulted as specified. *Id.* at 201 (emphasis added by the court). The same acceleration paragraph further stated:

9

Regulations of HUD Secretary. In many circumstances *regulations issued by the Secretary will limit [the l]ender's rights*, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. *This Security Instrument does not authorize acceleration or foreclosure if not permitted by the regulations of the Secretary.*

*Id.* (emphases added by the court).

The court concluded that these provisions were "'clear and unambiguous'" and "express[ed] the intent of the parties that the rights of acceleration and foreclosure do not accrue under the Deed of Trust unless permitted by HUD's regulations." *Id.* Therefore, "the references to HUD's regulations in the Deed of Trust are sufficient to incorporate them insofar as they prevent the borrower from accelerating or foreclosing." *Id.* The court rejected the lender's argument that the regulations could not be incorporated into the deed of trust because there was no language in the deed to explicitly state which regulations among hundreds were intended to be incorporated; instead, the court explained that this question was not presented, and that it decided "[o]nly those regulations that prevent a lender from accelerating or foreclosing are incorporated by the cited language in the [d]eed of [t]rust." *Id.* at 201–02.

Similarly, in *Wilkins v. Wells Fargo Bank, N.A.*, this Court determined that federal regulations were incorporated into a deed of trust when a rider attached to the deed of trust "specifically dictates that the regulations promulgated under Title 38 [of the United States Code] govern the rights and responsibilities of the parties, thereby incorporating the Title 38 regulatory provisions into the contract." *Wilkins v. Wells Fargo Bank, N.A.*, No. 2:15CV566, 2016 WL 6775692, at *4 (E.D. Va. Nov. 15, 2016). The rider in *Wilkins* stated:

Title 38, United States Code, . . . and Regulations issued thereunder and in effect on the date hereof *shall govern the rights, duties and liabilities of Borrower and Lender.* . . . [T]he provision for payment of any sum in connection with prepayment of the secured indebtedness and the provision that the lender may accelerate payment of the secured indebtedness pursuant to Covenant 18 of the Security Instrument, are hereby amended or negated to the extent necessary to conform such

10

instruments to said Title or Regulations.

*Id.* (emphasis added by the Court).

However, in *Jennings v. RoundPoint Mortgage Servicing Corp.*, this Court concluded that a deed that "merely prescribes laws that 'shall . . . govern[]' the Security Instrument" does not incorporate federal regulations, but instead simply "'identifies the law that governs the parties' agreement' and does not establish that the 'violation of . . . such law[s] is a breach of contract.'" *Jennings v. RoundPoint Mortg. Servicing Corp.*, 2018 WL 1065107 at *4 (E.D. Va. Feb. 27, 2018). The deed provision in *Jennings* stated:

> This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located.  In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.  To this end, the provisions of this Security Instrument and the Note are declared to be severable.

*Id.*

This Court distinguished this language in *Jennings* from that in *Mathews* and *Wilkins*, noting that in *Mathews*, "the language referenced the HUD's regulations as limiting the circumstances under which 'acceleration or foreclosure' was 'authorize[d].'" *Id.* Thus, unlike the general governing law provision in *Jennings*, the provision in *Mathews* "not only encompassed a more specific range of laws, but also, and more importantly, specified those laws as limits upon the lender's 'authori[ty]' to 'accelerat[e] or foreclos[e].'" *Id.*

The Circuit Court for the City of Virginia Beach reached a similar conclusion in *Lubitz v. Wells Fargo Bank, N.A.*, No. CL12-3800, 2012 WL 9737639 (Sept. 20, 2012).  The circuit court also distinguished the language in *Mathews* from the deed of trust in that case, which stated:

> If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this security instrument without further demand and may invoke the power of sale and any other

11

remedies permitted by Applicable Law.

*Id.* at *1.

The deed of trust in *Lubitz* further defined "Applicable Law" as "'all controlling applicable federal state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final non-appealable judicial opinions.'" *Id.* The circuit court concluded that the language was "not similar enough" to that in *Mathews*, which "expressly incorporates the HUD regulations." *Id.* Instead, the language in *Lubitz* "only incorporates all applicable law," which did not support plaintiff's private cause of action for violation of HUD regulations because: (1) those "HUD regulations are not applicable law because they are not 'controlling' or 'applicable,'" insofar as they did not provide a private right of action; and (2) the only regulation plaintiff cited was enacted after the deed of trust was executed, and the deed could not incorporate a regulation that was not in existence when it was signed. *Id.* at *1–2. *See also Anderson v. Wells Fargo Home Mortg.*, No. CV 14-5013 ADM/JSM, 2016 WL 755615, at *3 (D. Minn. Feb. 25, 2016) (dismissing a breach of contract claim based on the incorporation of RESPA provisions through language in a mortgage contract stating it "shall be governed by federal law and the law of the jurisdiction in which the Property is located," because "Plaintiffs cannot simply recast statutory claims as breach of contract causes of actions based on the mortgage's general governing law provision").

Here, the question is whether at least 12 C.F.R. § 1024.41 (Regulation X) was incorporated into the deed of trust such that Ocwen was required to follow the provisions of that regulation as conditions precedent to the foreclosure. *See Mathews*, 724 S.E.2d at 201–02 (noting that the issue was not whether all of the regulations under RESPA were incorporated, but only whether those regulations applicable to the foreclosure were incorporated by the particular language in the deed

of trust).

The deed of trust here contains a provision entitled "Governing Law; Severability; Rules

of Construction," which states:

> This Security Instrument shall be governed by federal law and the law of the
> jurisdiction in which the Property is located. *All rights and obligations* contained
> in this Security Instrument *are subject to any requirements and limitations of*
> *Applicable Law.* Applicable Law might explicitly or implicitly allow the parties to
> agree by contract or it might be silent, but such silence shall not be construed as a
> prohibition against agreement by contract. In the event that any provision or clause
> of this Security Instrument or the Note conflicts with Applicable Law, such conflict
> shall not affect other provisions of this Security Instrument or the Note which can
> be given effect without the conflicting provision.

ECF No. 5-2 at 12, deed of trust ¶ 16 (emphases added).

Although this language is somewhat similar to that used in *Mathews* and *Wilkins*, because

it states that rights and obligations in the deed of trust are "subject to any requirements and

limitations of Applicable Law," it differs from the language in those cases in an important respect,

because it does not specifically limit certain powers or obligations under the deed of trust. The

deed of trust here states that rights and obligations are simply "subject to" applicable law. In

contrast, the language in *Mathews* stated that the "Security Instrument does not authorize

acceleration or foreclosure if not permitted by the regulations of the Secretary," and the language

in *Wilkins* said that regulations "shall govern the rights, duties and liabilities of Borrower and

Lender" and that the provisions for payment and acceleration "are hereby amended or negated to

the extent necessary to conform such instruments to said Title [38 of the United States Code] or

Regulations." *Mathews*, 724 S.E.2d at 201; *Wilkins*, 2016 WL 6775692, at *4. The general

reference to applicable law here is not specific enough to incorporate RESPA and Regulation X

into the deed of trust such that plaintiffs have a private right of action based on violations of those

provisions.

13

Additionally, reading the deed of trust as whole, it does not appear that RESPA or Regulation X were generally incorporated, because specific provisions of the deed of trust refer to RESPA or "Applicable Law" for particular purposes. These specific references to RESPA would be unnecessary if RESPA or Regulation X were generally incorporated, and such specific provisions could potentially be in conflict if RESPA or Regulation X were generally incorporated. "When two provisions of a contract seemingly conflict . . . they [should] be harmonized so as to effectuate the intention of the parties as expressed in the contract considered as a whole," and "a specific provision of a contract governs over one that is more general in nature." *Condo. Servs., Inc. v. First Owners' Ass'n of Forty Six Hundred Condo., Inc.*, 709 S.E.2d 163, 170 (Va. 2011).

First, the provision of the deed of trust entitled "Acceleration; Remedies" sets out the borrower's rights, the notice and cure procedures, and the provisions for a foreclosure sale of the property, but it does not reference any loan modification requests, such as those that would be provided under Regulation X:

> Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. *If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law.* Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.
>
> *If Lender invokes the power of sale, Lender or Trustee shall give to Borrower, the owner of the Property, and all other persons, notice of sale as required by*

14

*Applicable Law.* Trustee shall give public notice of sale by advertising, in accordance with Applicable Law, once a week for two successive weeks in a newspaper having general circulation in the county or city in which any part of the Property is located, and by such additional or any different form of advertisement the Trustee deems advisable. Trustee may sell the Property on the eighth day after the first advertisement or any day thereafter, but not later than 30 days following the last advertisement. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by advertising in accordance with Applicable Law. Lender or its designee may purchase the Property at any sale.

ECF No. 5-2 at 14, deed of trust ¶ 22 (emphases added).

Second, the deed of trust makes multiple references to RESPA for particular purposes, but does not reference RESPA regarding loan modifications prior to a foreclosure. For example, references to RESPA and applicable law include the following. In the "Funds for Escrow Items" provision, the deed of trust states:

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at *the time specified under RESPA*, and (b) *not to exceed the maximum amount a lender can require under RESPA.* Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or *otherwise in accordance with Applicable Law.*

ECF No. 5-2 at 6, deed of trust ¶ 3 (emphases added).

That same provision further states: "Lender shall apply the Funds to pay the Escrow Items *no later than the time specified under RESPA.* Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge." *Id.* (emphasis added).

Under "Property Insurance," the deed of trust states that Lender has a right to hold insurance proceeds during a repair and restoration period: "Unless an agreement is made in writing

15

or *Applicable Law requires* interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds." ECF No. 5-2 at 7–8, deed of trust ¶ 5 (emphasis added). In "Notices," the deed of trust states: "Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. . . . If any notice required by this Security Instrument is also required under Applicable Law, *the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument*." ECF No. 5-2 at 12, deed of trust ¶ 15 (emphasis added). In "Sale of Note; Change of Loan Servicer; Notice of Grievance," the deed of trust states: "If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and *any other information RESPA requires* in connection with a notice of transfer of servicing." ECF No. 5-2 at 13, deed of trust ¶ 20 (emphasis added).

Given that these other, specific references to RESPA and applicable law would be meaningless or unnecessary if RESPA was generally incorporated into the deed of trust, the plain meaning of the deed of trust is that RESPA is incorporated therein where specifically stated, but that RESPA and Regulation X are not generally incorporated into the deed of trust.

Accordingly, plaintiffs cannot state a claim for breach of the deed of trust based on violations of RESPA and Regulation X, because that statute and regulation were not generally incorporated into the deed of trust, and were not specifically incorporated into the foreclosure provisions that are the basis of plaintiffs' claims. It is therefore recommended that Ocwen's motion to dismiss the breach of contract claim in count one be granted, and that the Court dismiss the breach of contract claim with prejudice. Additionally, although Ocwen does not appear to directly address the plaintiffs' claim in count three that the substitute trustee lacked the authority to

16

foreclose, that claim should be dismissed for the same reasons as the breach of contract claim, because it is also premised on the application of Regulation X to impose "conditions precedent" to foreclosure.

### 2. Plaintiffs failed to state a claim for breach of contract for good faith and fair dealing.

Ocwen argues that plaintiffs did not state a claim that Ocwen breached the covenant of good faith and fair dealing by failing to review their request for a loan modification, because "there is no contractual provision that requires such conduct." ECF No. 5 at 10. Plaintiffs respond that the covenant of good faith and fair dealing implied in every contract "does not point or apply to any specific clause in a contract, but to the dealing of the contractual relationship as a whole," so if "Ocwen violated RESPA and foreclosed unfairly and prematurely, they violated this covenant and the motion to dismiss this claim should also be denied." ECF No. 30 at 5.

Generally, "when parties to a contract create valid and binding rights, an implied covenant of good faith and fair dealing is inapplicable to those rights," and "such a covenant cannot be the vehicle for rewriting an unambiguous contract in order to create duties that do not otherwise exist." *Ward's Equip., Inc. v. New Holland N. Am., Inc.*, 493 S.E.2d 516, 520 (Va. 1997). "While breach of this duty [of good faith and fair dealing] does not constitute an independent tort, the failure to act in compliance with this duty can support a breach of contract claim." *Cagle v. CitiMortgage, Inc.*, No. 3:13CV807, 2015 WL 2063990, at *8 (E.D. Va. May 1, 2015).

There is no breach of the implied covenant when, for example, a trustee forecloses upon and sells a house when "[n]either the Note nor the Deed of Trust created a duty on the part of [the trustee] to delay or cancel the foreclosure sale due to the pendency of the [the homeowners'] HAMP [Home Affordable Modification Program] loan modification," because "[d]uties under this covenant do not extend to the review and processing of loan modifications, absent an express

17

provision indicating otherwise." *Id.* (citation and internal quotation marks omitted).  Nor can a plaintiff disguise a claim for violation of federal regulations as a breach of the implied covenant of good faith and fair dealing. *See id.* at *9 ("Plaintiff attempts to mask HAMP violations under the guise of an implied covenant of good faith and fair dealing.  Courts have routinely dismissed similar HAMP claims that are disguised as a violation of the duty of good faith and fair dealing.") (citation and internal quotation marks omitted).

Here, the sole basis for the breach of the covenant of good faith and fair dealing alleged in the complaint is that Ocwen "(i) fail[ed] to properly notify the Plaintiffs of the results of [their] loss mitigation application, and (ii) persist[ed] with a foreclosure auction on the property while the loan modification review, solicited by Ocwen, [was] ongoing." Compl. ¶ 36.  As noted above, the deed of trust did not create rights to the notice and loan modification review under Regulation X as alleged by plaintiffs.  The implied covenant of good faith and fair dealing cannot be used to graft such rights onto the deed of trust and create duties that do not otherwise exist. *See Ward's Equip., Inc.*, 493 S.E.2d at 520.  Nor can the implied covenant be used to disguise a claim for violation of Regulation X. *See Cagle*, 2015 WL 2063990, at *9.

Accordingly, plaintiffs cannot state a claim for breach of the implied covenant of good faith and fair dealing based on Ocwen's alleged failure to comply with notice and loan modification procedures in Regulation X.  It is therefore recommended that the Court grant Ocwen's motion to dismiss the claim in count two for breach of the implied covenant of good faith and fair dealing, and dismiss that claim with prejudice.

### 3.    Plaintiffs failed to state a claim for violation of the VCPA.

Ocwen argues that it is exempt from the VCPA because it is a "mortgage lender" as defined by Va. Code Ann. § 6.2-1600, and that this Court can take judicial notice of its status as a mortgage

lender. ECF No. 5 at 12–13. It also contends that the VCPA does not apply because plaintiffs alleged no facts showing that Ocwen is a "supplier" as defined by the VCPA. ECF No. 32 at 6–7. It further asserts that, even if the VCPA applies, plaintiffs failed to plead their VCPA claim with sufficient specificity, because they have not alleged the elements of fraud. ECF No. 5 at 13–14.

Plaintiffs respond that mortgage servicers are not excluded from the VCPA, and that, "[w]hile Ocwen is also a bank, in this context it is acting as a loan servicer." ECF No. 30 at 5–6. They also contend that there is "no requirement to plead fraud or fraudulent misrepresentation" for a VCPA claim, and that the "representations made by Ocwen need only misrepresent a fact connected to a consumer transaction." *Id*. at 6.

By its express terms, the VCPA does not apply to "[b]anks, savings institutions, credit unions, small loan companies, public service corporations, [and] mortgage lenders as defined in § 6.2-1600." Va. Code Ann. § 59.1-199(D). These exempt entities are regulated through other means and agencies, so the VCPA does not provide a private right of action against them. *See Jefferson v. Briner Inc.*, No. 3:05CV652, 2006 WL 1720692, at *10 (E.D. Va. June 21, 2006) (concluding that "mortgage lender" entities were exempt from VCPA claims, because "mortgage lenders are exclusively regulated by the State Corporation Commission and not subject to oversight by private parties in an action such as this"). A mortgage lender "means any person who directly or indirectly originates or makes mortgage loans," and a mortgage loan "means a loan made to an individual, the proceeds of which are to be used primarily for personal, family or household purposes, which loan is secured by a mortgage or deed of trust upon any interest in one- to four-family residential property located in the Commonwealth, regardless of where made, including the renewal or refinancing of any such loan," subject to certain exclusions not applicable here. Va. Code Ann. § 6.2-1600.

19

This Court may take judicial notice of whether Ocwen is a mortgage lender. *See* Fed. R. Evid. 201(b)–(d) (noting that a court "may take judicial notice on its own" "at any stage of the proceeding" of a "fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *Ademiluyi v. PennyMac Mortg. Inv. Tr. Holdings I, LLC*, 929 F. Supp. 2d 502, 510 (D. Md. 2013) (taking judicial notice on a Rule 12(b)(6) motion "of defendants' licensing status represented via the Nationwide Mortgage Licensing System ('NMLS') website, available at www.nmlsconsumeraccess.org").

Ocwen represents, and plaintiffs do not dispute, that it "has registered for a lender license with the Nationwide Mortgage Licensing System and Registry as an entity that directly or indirectly originates or makes mortgage loans," ECF No. 5 at 12, and the NMLS website shows that it has a "Lender License" in Virginia.[10]  *Id.* at 12 n.5.  NMLS Consumer Access, http://www.nmlsconsumeraccess.org/EntityDetails.aspx/COMPANY/1852  (last  visited November 2, 2018) (reflecting that Ocwen's "Lender License" was first issued in 2005 and is current in Virginia).

Virginia law requires that a "mortgage lender" be licensed and registered with the NMLS. "No person shall engage in business as a mortgage lender or a mortgage broker, or hold himself out to the general public to be a mortgage lender or a mortgage broker, unless such person has first obtained a license under this chapter," and "[e]very mortgage lender and mortgage broker required

---

[10] Plaintiffs also acknowledge that Ocwen is a bank, which is another exempt category under the VCPA. ECF No. 30 at 6 ("While Ocwen is also a bank, in this context it is acting as a loan servicer.").

to be licensed under this chapter shall register with the Registry . . . ."[11] Va. Code. Ann. §§ 6.2-1601(A), (B). Thus, Ocwen is a licensed "mortgage lender" in Virginia.

Courts have repeatedly determined that the VCPA does not apply to an entity that falls within one of the exempt categories of businesses in Va. Code. Ann. § 59.1-199 (listing acts and categories of business to which the VCPA does not apply). For example, in *Schmidt v. Wells Fargo Home Mortgage*, the court dismissed claims against Wells Fargo because it was a bank excluded from the VCPA under Va. Code Ann. § 59.1-199(D): "The [VCPA] expressly excludes 'banks, savings institutions, credit unions, small loan companies, public service corporations, mortgage lenders . . . ,' and others. . . . Because Defendant Wells Fargo is a bank, this exclusion is dispositive of the Plaintiffs' VCPA claim." *Schmidt v. Wells Fargo Home Mortg.*, No. 3:11-CV-059, 2011 WL 1597658, at *4 (E.D. Va. Apr. 26, 2011), *aff'd*, 482 F. App'x 868 (4th Cir. 2012). *See also Farley v. Bank of Am., N.A.*, No. 3:14-CV-568, 2015 WL 3651165, at *1, *6 (E.D. Va. June 11, 2015), *aff'd*, 615 F. App'x 804 (4th Cir. 2015) (dismissing with prejudice a VCPA claim against Bank of America ("BANA"), which "appears to be the holder and servicer of a note and mortgage to property" owned by the plaintiffs, because "[t]he Complaint involves BANA, which is a bank," and the "VCPA explicitly states that it does not apply to banks").

Similarly, the court also dismissed, without leave to amend, VCPA claims against a company that qualified as a "mortgage lender" because it originated a mortgage loan. *Muncy v. Centex Home Equity Co.*, No. 1:14CV00016, 2014 WL 3359335, at *4 (W.D. Va. July 9, 2014). The "mortgage lender" exclusion from the VCPA applies even if the entity that qualifies as a

---

[11] "'Nationwide Mortgage Licensing System and Registry' or 'Registry' means the mortgage licensing and registration system developed and maintained by the Conference of State Bank Supervisors and the American Association of Residential Mortgage Regulators." Va. Code. Ann. § 6.1-1600.

21

"mortgage lender" was not the originator of the underlying obligation. *See Poindexter v. Mercedes-Benz Credit Corp.*, 792 F.3d 406, 415 (4th Cir. 2015) ("Poindexter misreads the VCPA's exemption to require MBCC to be the originator of the underlying obligation. To the contrary, the statutory definition of a 'mortgage lender' includes 'any person who directly or indirectly originates or makes a mortgage loan.'"). In a Rule 12(b)(6) motion converted into one for summary judgment, the court ruled that two companies were entitled to judgment because they qualified as "mortgage lenders" under the VCPA. *Jefferson*, 2006 WL 1720692, at *10 ("Both Briner and Carteret therefore fall within the definition of mortgage lender . . . . Therefore, Briner and Carteret are entitled to judgment on the VCPA claim"). Accordingly, because Ocwen is a "mortgage lender," the VCPA does not apply to it, and plaintiffs cannot state a claim against Ocwen under the VCPA.

Even if Ocwen was not exempt from the VCPA due to its status as a "mortgage lender," plaintiffs have not sufficiently pled that the VCPA applies to their claims. The complaint does not allege how the real estate transaction or loan modification process described therein is a "consumer transaction" governed by the VCPA. The VCPA prohibits a "supplier"—defined as "a seller, lessor or licensor who advertises, solicits or engages in consumer transactions, or a manufacturer, distributor or licensor who advertises and sells, leases or licenses goods or services to be resold, leased or sublicensed by other persons in consumer transactions"—from engaging in certain prohibited acts "in connection with a consumer transaction," which is defined to include the "advertisement, sale, lease, license or offering for sale, lease or license, of goods or services to be used primarily for personal, family or household purposes." Va. Code Ann. §§ 59.1-198, -200(A).

Courts have dismissed VCPA claims in similar cases when the complaint fails to plead facts supporting these elements. For example, the District Court for the Western District of

22

Virginia concluded that, where the complaint "concerns a real estate transaction, specifically the terms of a loan modification and the resulting foreclosure when the modification failed," the complaint should be dismissed when it did not allege the elements of a consumer transaction: "Without pleading facts that show how a loan modification and foreclosure are consumer transactions rather than credit transactions, which are statutorily exempt from the VCPA, this Court finds Plaintiffs have failed to plead sufficient facts to support their allegation." *McFadden v. Fed. Nat. Mortg. Ass'n*, No. 7:11-CV-335, 2012 WL 37169, at *8 (W.D. Va. Jan. 9, 2012), *aff'd,* No. 12-1125 (4th Cir. May 20, 2013); *see also Farley*, 2015 WL 3651165, at *6 (dismissing a VCPA claim with prejudice because "[t]his matter does not involve a consumer transaction as defined under the VCPA").

Similarly, a court in this district dismissed a VCPA claim with prejudice when the complaint failed to allege that a loan servicer committed certain acts in the course of a "consumer transaction." *Salehi v. Wells Fargo Bank, N.A.*, No. 1:11-CV-1323, 2012 WL 2119333, at *6–7 (E.D. Va. June 11, 2012). In that case, the court noted:

> [T]he Amended Complaint fails to allege the false statements to Plaintiff were made in connection with a consumer transaction. The Amended Complaint alleges that WFHMI, a loan servicer, sent consumers statements of the amount due on the loan and received loan payments from those consumers. It is alleged that WFHMI made to Plaintiff, through White, false statements about the status of his loan. Nonetheless, it does not allege WFHMI's false statements to Plaintiff [are] related to specific transactions where WFHMI advertises, sells, leases, licenses or offers for sale, lease or license its goods or service as required by [the VCPA].

*Id.* at *6.

Accordingly, the VCPA claim should be dismissed because the complaint does not sufficiently plead that Ocwen meets the definition of a supplier or that this transaction is a

consumer transaction.[12]

Furthermore, the VCPA claim should be dismissed for failure to plead with the particularity required for fraud-based causes of action. Plaintiffs' claim for violation of Virginia Code § 59.1-200(A)(14) includes an allegation of fraud. Rule 9(b) requires: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Under this rule, a plaintiff asserting a fraud-based claim "must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *U.S. ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 455–56 (4th Cir. 2013) (citation and internal quotation marks omitted).

In addition to these requirements from the Federal Rules of Civil Procedure, VCPA claims must be pled with some specificity. The VCPA "requires a plaintiff to allege a fraudulent misrepresentation of fact," and such "[a]llegations of misrepresentation of fact must include the elements of fraud: a false representation, of material fact, made intentionally and knowingly, with intent to mislead, reliance by the party misled, and resulting damage." *Hamilton v. Boddie-Noell Enters., Inc.*, 88 F. Supp. 3d 588, 591 (W.D. Va. 2015) (citations and internal quotation marks omitted).

Plaintiffs have failed to allege any specific facts to support their VCPA claim as required by the VCPA or Rule 9(b). Additionally, as noted above, plaintiffs have not established that the VCPA applies to Ocwen and this loan. For all these reasons, the VCPA claim should be dismissed

---

[12] Because the VCPA claim should be dismissed for the reasons stated above, the Court need not address whether plaintiffs sufficiently pled the elements for misrepresentation with their assertion that Ocwen "has used deception, fraud, false pretense or misrepresentation in connection with the Plaintiffs' consumer transaction which has damaged the Plaintiffs. These practices are specifically prohibited by [Va. Code Ann.] § 59.1-200(A)(14)." Compl. ¶ 46.

with prejudice.

**4.     The claim for injunctive relief is moot.**

Ocwen argues that plaintiffs' request for injunctive relief to prevent foreclosure proceedings is moot, because the foreclosure sale already occurred, and that plaintiffs failed to support their request for injunctive relief because they cannot show that they are likely to succeed on the merits. ECF No. 5 at 14. Plaintiffs acknowledge that the property was sold and that "[t]his claim no longer applies."[13] ECF No. 30 at 7. Accordingly, the request for injunctive relief should be denied as moot.

## III.   RECOMMENDATION

For the forgoing reasons, the Court **RECOMMENDS** that Ocwen's motion to dismiss, ECF No. 5, be **GRANTED,** that the claims in the complaint against Ocwen be **DISMISSED WITH PREJUDICE,** and that the request for injunctive relief be **DENIED AS MOOT.**

## IV.   REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections

---

[13] Plaintiffs add that "since the foreclosure sale was invalid, it should be rescinded, a different form of equitable relief and plaintiffs respectfully request leave to amend the complaint to reflect the changed circumstances." ECF No. 30 at 7. No such motion for leave to amend has been filed to either remove the injunctive relief claim or to assert a claim for rescission.

within fourteen (14) days after being served with a copy thereof. *See* Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2.  A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

/s/

Robert J. Krask
United States Magistrate Judge

Robert J.  Krask
United States Magistrate Judge

Norfolk, Virginia
November 2, 2018

26